[Nos. A124892, A125340. First Dist., Div. Four. July 22, 2011.]

STATE OF CALIFORNIA ex rel. STANDARD ELEVATOR COMPANY, INC., Plaintiff and Appellant, v.
WEST BAY BUILDERS, INC., et al., Defendants and Respondents.

964

**COUNSEL**

Law Office of George W. Wolff and George W. Wolff for Plaintiff and Appellant.

McInerney & Dillon, Timothy L. McInerney and LeCarie Shalece Whitfield for Defendants and Respondents.

**OPINION**

**SEPULVEDA, J.**—A general contractor removed a subcontractor from a public works project when it learned the subcontractor was unlicensed, lied about its references, and could not secure bonds for its work. The general contractor substituted other subcontractors to complete the project. The general contractor sued the subcontractor to recover as damages the amount paid to complete the work above the amount bid by the unlicensed subcontractor. The subcontractor cross-complained upon allegations that it and other subcontractors were substituted in violation of the Public Contract Code, which sets forth requirements for the substitution of subcontractors on a public works project. The court found the subcontractor liable for fraud in its bid submission and rejected claims of improper substitution of subcontractors. The general contractor was awarded damages.

The subcontractor then filed this lawsuit against the general contractor under California's False Claims Act (Gov. Code, § 12650 et seq.) (CFCA) upon allegations that the general contractor violated the Public Contract Code in substituting subcontractors and that those violations rendered false the general contractor's certification of legal compliance when submitting payment claims. The trial court granted summary judgment to the general contractor upon undisputed evidence that the allegations described in the subcontractor's CFCA complaint were not new assertions of fraud but a repetition of information publicly disclosed in prior civil litigation, including the subcontractor's own prior cross-complaint against the general contractor. (Gov. Code, § 12652, subd. (d)(3)(A)). The court also awarded the general contractor attorney fees for defending against a frivolous and harassing lawsuit. (Gov. Code, former § 12652, subd. (g)(9).) We affirm the judgment and fee award.

## I. FACTS[1]

In May 1999, general contractor West Bay Builders, Inc. (West Bay), prepared a bid for a public work, the construction of the Meadows Middle School (the Project), for the San Ramon Valley School District (District). As required by the Public Contract Code, West Bay's bid listed subcontractors that promised to perform work valued at greater than 0.5 percent of the prime contract bid. (Pub. Contract Code, § 4104, subd. (a).) Typically, subcontractor bids are received on the day the prime contract bid is due for submission to the public entity and are sometimes received by the general contractor just minutes before the prime contract bid is due. West Bay followed industry practice in submitting its bid to the District. West Bay stationed a bid runner at the place specified for submitting the bid and telephoned last-minute changes to the bid runner. The bid runner's job was to make the changes to the bid and hand-deliver West Bay's bid to the District's representative responsible for receiving bids.

West Bay received bids from various subcontractors to perform different portions of work on the Project. Project specifications included divisions that

---

[1] The parties have slowed our review by failing to follow proper appellate procedure. Appellant's opening brief fails to include any summary of facts. (Cal. Rules of Court, rule 8.204(a)(2)(C); Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2010) ¶¶ 9:126 to 9:127, p. 9-36 (rev. # 1, 2006).) Respondent's brief fails to support its factual statements with citation to the volume and page number of the record where the matter appears. (Cal. Rules of Court, rule 8.204(a)(1)(C).) General citation to the statements of undisputed material facts is inadequate. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 9:39.5, p. 9-13 (rev. # 1, 2008).) A citation to the supporting evidence is required, especially where, as here, some of the facts were disputed below. Respondent provides no citations to the supporting evidence and, in some instances (such as fact No. 50), omits the supporting evidence from the record. We have ignored all assertions of fact unsupported by the record.

identified generic categories of work and sections within each division that identified particular scopes of work. Relevant here, division 5 of the specifications identified the structural steel category of work and included metal decking and ornamental iron fencing. On bid day, West Bay received three separate subcontractor bids for different components of division 5 work: Stockton Iron Works for structural steel, Dura Fence for iron fencing, and JD2 for metal decking. Three or four minutes before the bid submission deadline, West Bay received a subcontractor's bid from Standard Metal Fabrication to perform all of the division 5 work for $761,000, which was lower than the combination of bids from Stockton Iron Works, Dura Fence, and JD2 for the same work.

Standard Metal Fabrication is a related business entity to Standard Elevator Company, Inc., the qui tam plaintiff here. Plaintiff Standard Elevator Company denies this on appeal, but in its original complaint filed in this CFCA action, plaintiff denominated itself "Standard Elevator Company, Inc. a California Corporation, doing business as Standard Metal Fabrication." It was averred in the original complaint that Standard Elevator Company, Inc., "sometimes does business under the duly registered business name of Standard Metal Fabrication." Similarly, in prior litigation, Standard Metal Fabrication's principal asserted that Standard Metal Fabrication is "merely a fictitious business name" for Standard Elevator Company. Standard Metal Fabrication and Standard Elevator Company may be treated interchangeably for our purposes here, and will henceforth be referred to as "Standard" in this opinion.[2]

West Bay hurriedly incorporated Standard's subcontract bid into its prime contract bid, called the bid runner to cross out Stockton Iron Works, Dura Fence, and JD2, and to insert Standard in their stead and to lower West Bay's overall bid price. With less than one minute before West Bay's bid was due, the bid runner changed West Bay's overall bid price, crossed out Stockton Iron Works, and inserted Standard. Inadvertently, the bid runner did not cross

---

[2] In prior litigation between the parties, Nari Ramchandani, the principal of Standard Metal Fabrication and Standard Elevator Company, not only maintained that Standard Metal Fabrication was a fictitious business name for Standard Elevator Company, but also maintained that Standard Elevator Company's general building contractor license effectively licensed Standard Metal Fabrication as well—and authorized Standard Metal Fabrication to perform structural steelwork in the construction of a school for which a specialty license is required. Moreover, Standard Metal Fabrication filed a case screening form with this court during prior litigation between the parties under the name "Standard Elevator Company, Inc., dba Standard Metal Fabrication." Despite plaintiff's affirmative representations equating Standard Elevator Company and Standard Metal Fabrication, in both this and prior litigation, plaintiff Standard Elevator Company states in its brief on appeal that defendant West Bay has tried to "mislead" the court by the "deceptive artifice" of equating the two business entities. To the contrary, it appears that it is plaintiff who has tried to mislead this court.

out Dura Fence or JD2, which were listed on a different page. West Bay's bid therefore mistakenly listed more than one subcontractor to perform portions of the steelwork.

The District informed West Bay that it was the apparent low bidder. On May 17, 1999, four days after bid opening, West Bay wrote a letter to the District informing it of its inadvertent clerical error in listing Dura Fence and JD2 as subcontractors for the same work being performed by Standard. On May 19, 1999, two days later, the District approved West Bay's bid and awarded the Project contract to it.

West Bay later learned that Standard, the listed subcontractor on division 5 metalwork, was unlicensed, lied about its references, and could not secure bonds for its work. At West Bay's request, the District approved removal of Standard and substitution of another subcontractor. West Bay also made other subcontractor substitutions during Project construction.

In December 2000, West Bay sued Standard and its principal to recover as damages the amount West Bay had to pay to complete the steelwork above the amount bid by Standard. During discovery, Standard reviewed about 30 boxes of West Bay's documents and job files, and learned that West Bay had made a number of subcontractor substitutions on the Project. Standard filed a cross-complaint claiming that West Bay did not comply with the Public Contract Code in substituting Standard and other metalwork subcontractors on the Project. A five-day bench trial was held. The District's director of facilities during Project construction was called at trial to testify about the substitution of Standard. In May 2004, following the conclusion of trial, the court issued a statement of decision rejecting Standard's claim of improper substitution, finding Standard liable for fraud and promissory estoppel in the submission of its subcontractor bid, and awarding damages to West Bay. Final judgment against Standard was filed in September 2004. In March 2005, Standard filed an unsuccessful motion for new trial. Standard later appealed. In a case screening form filed on appeal, Standard stated that West Bay illegally substituted subcontractors in violation of the Public Contract Code. Standard stated that it sought "[r]eversal of trial court's decision; right to prosecute cross-complaint, [and] False Claim case." Standard's appeal was subsequently dismissed as untimely.

In March 2005, in addition to filing a motion for new trial seeking to overturn West Bay's judgment against it, Standard also filed this lawsuit against West Bay. Standard was represented by the same attorney in both actions. The CFCA case was initially filed under seal, and not served until August 2005. With appeal pending in West Bay's action against Standard and Standard's CFCA action still under seal, Standard wrote to West Bay offering

to settle all claims if West Bay accepted a specified amount far less than the judgment amount. No settlement was reached. Standard served the CFCA complaint. Standard then offered to stay the CFCA action pending the outcome of the appeal of West Bay's damages judgment. In a proposed stipulation to stay the CFCA action, Standard's counsel stated that a stay is necessary "to prevent duplicative or repetitive litigation over the same and [*sic*] similar issues." It appears that a stay was discussed but not imposed.

The CFCA action proceeded. Standard alleges in the CFCA action, as it did in the prior proceeding it lost, that West Bay's subcontractor substitutions violated the Public Contract Code. Standard maintains that those alleged Public Contract Code violations constitute violations of the CFCA because West Bay certified that it was in compliance with the Public Contract Code in submitting payment claims on the Project. (Gov. Code, § 12651, subd. (a)(1), (2), (8).) Standard sued both West Bay and its principal, Paul Brian Thomson (collectively, West Bay). The California Attorney General and the District declined to participate in the action. An amended complaint and second amended complaint were filed. West Bay answered the operative second amended complaint in January 2008.[3]

West Bay filed a motion for summary judgment in May 2008. West Bay presented several grounds for its motion, one of which was that Standard was relying upon information publicly disclosed in prior litigation. The prior litigation was West Bay's lawsuit against Standard (with cross-complaint) and a plaster subcontractor's lawsuit for payment against West Bay and the District, *M. Perez Co., Inc. v. West Bay Builders, Inc.* (Super. Ct. Contra Costa County, No. C01-02005).[4] Government Code section 12652, subdivision (d)(3)(A) bars a private qui tam CFCA action that is based on the prior "public disclosure" of the facts supporting the claim, where the disclosure was made "in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media," unless the qui tam plaintiff "is an original source of the information."

---

[3] Standard argues on appeal that West Bay suffered a default when West Bay failed to answer. Standard is mistaken. Standard requested entry of default on the original complaint, but that complaint was superseded by an amended complaint before entry of default was requested. Standard also argues that West Bay failed to raise the public disclosure bar as an affirmative defense in its answer. Standard presents no legal authority to support its claim that the matter must be pleaded as an affirmative defense. Nor did Standard sufficiently argue the claim in the trial court, thus forfeiting the claim on appeal.

[4] A case management statement in the plaster subcontractor litigation mentions several other cases concerning the Project, but the nature of the allegations in those cases is not developed in the record.

In October 2008, the trial court granted summary judgment upon concluding that the information forming the basis of Standard's CFCA complaint was already known by the District before the CFCA lawsuit was filed, and Standard was not an original source of the information.[5] The court denied Standard's new trial motion. Judgment was filed in January 2009, with an award of costs and attorney fees subject to proof. Costs were subsequently assessed at $6,293.46.

West Bay filed a separate motion for attorney fees. West Bay claimed entitlement to fees under the CFCA, which then provided: "the court may award to the defendant its reasonable attorney's fees and expenses against the party that proceeded with the action if the defendant prevails in the action and the court finds that the claim was clearly frivolous, clearly vexatious, or brought solely for purposes of harassment." (Gov. Code, former § 12652, subd. (g)(9).)[6] The court granted the motion in June 2009. The court found the action frivolous because the same or substantially similar allegations and transactions relied upon by Standard in the CFCA action were publicly disclosed in prior litigation between Standard and West Bay. The court also found that the CFCA action was brought for harassment in retaliation against West Bay for removing Standard as a subcontractor and for successfully suing Standard for Standard's fraudulent subcontractor bid. The court awarded West Bay $201,483.75 in attorney fees for defending itself against Standard's frivolous and harassing lawsuit.

Standard filed a timely appeal from the judgment, and a timely appeal from the postjudgment fee award. The parties completed briefing on appeal in early 2011.[7]

---

[5] The court's summary judgment order sufficiently stated the reasons for its determination. (Code Civ. Proc., § 437c, subd. (g).) We reject Standard's claim to the contrary.

[6] The statute now allows fees if a claim is brought "primarily," rather than "solely," for purposes of harassment. (Stats. 2009, ch. 277, § 3.) We apply the "solely" standard applicable at the time fees were awarded here.

[7] There is additional litigation between the parties. In January 2009, after judgment in West Bay's favor was entered but before an award of fees, West Bay sued Standard, Standard's principal, Nari Ramchandani, and Standard's attorney, George Wolff, for malicious prosecution in bringing this CFCA case. The court refused to stay the case pending resolution of this appeal, and struck the malicious prosecution complaint because the suit arose from protected petitioning activity, and plaintiff could not show a probability of prevailing on the claim. (Code Civ. Proc., § 425.16.) On the latter point, the court noted that a malicious prosecution action requires a favorable termination on the merits and found that the underlying CFCA action was *not* resolved on the merits because the case was resolved under the public disclosure bar, and West Bay's guilt or innocence was never adjudicated. The malicious prosecution case was the subject of a separate appeal in this court. (*West Bay Builders, Inc. v. Standard Elevator Co.* (July 22, 2011, A126187) [nonpub. opn.].)

## II. DISCUSSION

### A. *General Principles of the CFCA*

The CFCA permits the recovery of civil penalties and treble damages from any person who knowingly presents a false claim for payment to the state or a political subdivision. (Gov. Code, § 12651, subd. (a)(1).) The CFCA was enacted in 1987 and was modeled on the federal False Claims Act (31 U.S.C. § 3729 et seq.) (FFCA).[8] (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1187, 1197 [48 Cal.Rptr.3d 108, 141 P.3d 225].) The FFCA "was enacted in 1863 with the principal goal of 'stopping the massive frauds perpetrated by large [private] contractors during the Civil War.' " (*Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 781 [146 L.Ed.2d 836, 120 S.Ct. 1858].) As presently enacted, the FFCA aims "to alert the government as early as possible to fraud that is being committed against it and to encourage insiders to come forward with such information where they would otherwise have little incentive to do so." (*U.S. ex rel. Biddle v. Board of Trustees of Stanford University* (9th Cir. 1998) 161 F.3d 533, 538–539 (*Biddle*).) Like the FFCA, the CFCA's ultimate purpose is " ' "to protect the public fisc." ' " (*Wells, supra,* at p. 1196.)

A CFCA action may be initiated by any person, as a qui tam plaintiff, in the name of the state or political subdivision whose funds are involved.[9] (Gov. Code, § 12652, subd. (c)(1), (3).) A qui tam plaintiff receives "a significant 'cut' " of CFCA litigation proceeds—as much as 50 percent. (*Wells v. One2One Learning Foundation, supra,* 39 Cal.4th at pp. 1188–1189.) The CFCA " 'ferrets out fraud on the government by offering an incentive to persons with evidence of such fraud to come forward and disclose that evidence to the government.' [Citations.] The typical whistleblower 'is unsophisticated in the legal intricacies of fraud law, and . . . happens across evidence of fraud during the course of employment.' [Citation.] But qui tam actions also 'present the danger of parasitic exploitation of the public coffers' by 'opportunistic plaintiffs who have no significant information to contribute of their own.' [Citation.] Providing cash bounties to freeloaders does not serve the purpose of the [CFCA] to protect the public fisc." (*State of California v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 746–747 [48 Cal.Rptr.3d 427], fn. omitted (*Grayson*).)

---

[8] Standard's unopposed request for judicial notice of the legislative history of the CFCA is granted.

[9] "The term 'qui tam' comes from the Latin expression 'qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which means, 'who pursues this action on our Lord the King's behalf as well as his own'." (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538 [132 Cal.Rptr.2d 165].)

"The [CFCA], like its federal counterpart (31 U.S.C. § 3729 et seq.), erects a jurisdictional bar to qui tam actions that do not assist the government in ferreting out fraud because the fraudulent allegations or transactions are already in the public domain." (*Grayson, supra,* 142 Cal.App.4th at p. 748.) "Where there has been a public disclosure the governmental authority is 'already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose.'" (*Ibid.*) Thus, Government Code section 12652, subdivision (d)(3)(A) provides that "[n]o court shall have jurisdiction over an action under this article based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in an investigation, report, hearing, or audit conducted by or at the request of the Senate, Assembly, auditor, or governing body of a political subdivision, or by the news media, unless the action is brought by the Attorney General or the prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information."

 Under California law, there are currently two models for interpretation and application of the public disclosure bar. The first model, advocated by Standard, was presented in *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668 [1 Cal.Rptr.3d 312] (*Wohlner*). In that case, a former consultant to the defendant solid waste disposal company brought an action under the CFCA alleging that the defendant had fraudulently overcharged a city for disposal services. (109 Cal.App.4th at pp. 1673–1674.) The same defendant had previously been the subject of two other lawsuits also alleging a form of fraudulent overbilling. (*Id.* at pp. 1672–1673.) The court ruled that the public disclosure bar "should be applied only as necessary to preclude parasitic or opportunistic actions, but not so broadly as to undermine the Legislature's intent that relators assist in the prevention, identification, investigation, and prosecution of false claims." (*Id.* at p. 1683.) The court held that, under the CFCA public disclosure bar, a qui tam action is based upon publicly available information only if the action alleged the same conduct that was described in the public disclosures. (109 Cal.App.4th at pp. 1684–1685.) Applying this rule, the court found the bar inapplicable because the fraud alleged in the plaintiff's action involved a different type of solid waste disposal charge, and one imposed at a different time, from the charges at issue in the prior lawsuits. (*Id.* at p. 1684.)

The second model for interpretation and application of the public disclosure bar, advocated by West·Bay, is provided in *Grayson, supra,* 142 Cal.App.4th 741, which adopts a broader approach. The *Grayson* plaintiff, an attorney and telecommunications consultant, filed suit against a number of telephone companies alleging that the unused balances on phone cards were unclaimed property that should be surrendered to the state. (*Id.* at p. 747.) That assertion had been made previously in trade journals, and the telephone companies had filed lists of unclaimed property with the state that omitted

unused phone card balances. (*Id.* at pp. 750–751.) Interpreting the CFCA public disclosure bar, the court ruled that "[t]he jurisdictional bar is 'triggered whenever a plaintiff files a qui tam complaint containing allegations or describing transactions "substantially similar" to those already in the public domain so that the publicly available information is already sufficient to place the government on notice of the alleged fraud.' [Citation.] . . . '. . . All that is required is a finding that the publicly disclosed allegations were sufficient to put the government on notice of the alleged [CFCA] violations.' " (142 Cal.App.4th at p. 748.) The *Grayson* plaintiff's CFCA claim was held barred because "his complaint merely echoes what the government already knew . . ." from trade journals and unclaimed property reports—that the telephone companies failed to escheat the property. (142 Cal.App.4th at p. 752.)

■ We believe the *Grayson* approach is better reasoned. Two points bear emphasis. First, *Wohlner* relied heavily upon an earlier case narrowly construing an Insurance Code qui tam provision, with purposes distinct from the CFCA. (*Wohlner, supra,* 109 Cal.App.4th at pp. 1680–1683, citing *People ex rel. Allstate Ins. Co. v. Weitzman, supra,* 107 Cal.App.4th 534.) The reliance seems misplaced because the case relied upon, *Allstate,* itself cautioned against extending its narrow. reading of the Insurance Code public disclosure bar to the CFCA, which "was intended to limit the availability of qui tam actions so as to protect against 'opportunistic' or 'parasitic' actions." (*Allstate, supra,* at p. 566.) Second, the *Grayson* approach is consistent with how almost all federal courts interpret an analogous public disclosure bar in the FFCA. (*U.S. ex rel. Ondis v. City of Woonsocket* (1st Cir. 2009) 587 F.3d 49, 57 [collecting cases].) Federal cases interpreting the FFCA, upon which the CFCA was patterned, are instructive. (*Grayson, supra,* 142 Cal.App.4th at p. 746, fn. 3.) Although some provisions of the FFCA and CFCA differ, and thus demand different treatment (*State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220, 1234–1236 [48 Cal.Rptr.3d 144, 141 P.3d 256]), the FFCA and CFCA provisions relevant here are similarly worded, making federal interpretation of analogous provisions relevant (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1299 [32 Cal.Rptr.3d 498, 116 P.3d 1175]). Significantly, all but the Fourth Circuit Court of Appeals hold that a relator's claim is based upon a public disclosure, and thus barred by the FFCA, if "the relator's allegations are *substantially similar* to information disclosed publicly" in specified fora, such as a civil hearing. (*U.S. ex rel. Ondis v. City of Woonsocket,* at p. 57, italics added.) We follow the majority view.

B. *Summary judgment was properly granted*

The standard of review after a trial court grants summary judgment is well established. On appeal from a grant of summary judgment, we exercise our

independent judgment in determining whether there are triable issues of fact and whether the moving party is entitled to judgment as a matter of law. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334–335 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

Summary judgment was properly granted because the allegations and transactions described in Standard's CFCA complaint are substantially similar to information publicly disclosed in prior lawsuits. Standard's operative second amended complaint alleged that the Public Contract Code requires general contractors bidding on public works projects to list the names of and portions of work to be performed by subcontractors performing any work exceeding 0.5 percent in value of the amount of the general contractor's total bid price and to use the listed subcontractors unless substitution is properly approved by the public entity. (Pub. Contract Code, § 4100 et seq.) Standard alleges that West Bay violated these Public Contract Code requirements in substituting subcontractors for Standard and others without obtaining valid District approval. Standard further alleges that West Bay's "application for and receipt of progress payments and final payments for the PROJECT expressly and impliedly represented and certified to the District that [West Bay] had fully complied with the Public Contract Code," which representations and certifications were false. Standard claims that West Bay's conduct constituted violation of the CFCA under three statutory provisions: (1) knowingly presenting a false claim for payment (Gov. Code, § 12651, subd. (a)(1)); (2) knowingly making or using a false record or statement material to a false claim (Gov. Code, § 12651, subd. (a)(2)); and (3) being the beneficiary of an inadvertent submission of a false claim, subsequently discovering the falsity of the claim, and failing to disclose the false claim to the government (Gov. Code, § 12651, subd. (a)(8)).

■ The allegations described in Standard's CFCA complaint are substantially similar to information publicly disclosed in prior civil hearings. " 'Any information disclosed through civil litigation and on file with the clerk's office should be considered a public disclosure of allegations in a civil hearing for the purposes of [the FFCA]' and '[t]his includes civil complaints'." (*U.S. ex rel. Reagan v. East Texas Medical Center Regional Healthcare System* (5th Cir. 2004) 384 F.3d 168, 174.) The same logic applies to the analogous CFCA.

The prior civil hearings included a plaster subcontractor's lawsuit against West Bay and the District for nonpayment that alerted the District to the fact that an unlisted subcontractor performed substantial work on the Project. More importantly, the information was disclosed in Standard's own cross-complaint against West Bay in prior litigation, other documents filed in that civil proceeding, trial testimony in open court, and documents filed on appeal.

As described in our statement of facts, the prior litigation arose after West Bay removed Standard as a subcontractor on the Project upon learning that Standard was unlicensed, lied about its references, and could not secure bonds for its work. West Bay sued Standard in December 2000 to recover as damages the amount West Bay had to pay to complete the steelwork above the amount bid by Standard. During discovery, Standard reviewed numerous boxes of West Bay's documents and job files, and learned that West Bay made a number of subcontractor substitutions on the Project. Standard filed a cross-complaint claiming that West Bay did not comply with the Public Contract Code in substituting Standard and other metalwork subcontractors on the Project. A District representative testified at the trial. In May 2004, following the conclusion of trial, the court issued a statement of decision rejecting Standard's claim of improper substitution, finding Standard liable for fraud and promissory estoppel in the submission of its subcontractor bid, and awarding damages to West Bay. Final judgment against Standard was filed in September 2004, and Standard filed this CFCA action months later, in March 2005.

The substantial similarity between information publicly disclosed in the prior lawsuit between West Bay and Standard, and the allegations of the current CFCA complaint, is apparent. In the prior cross-complaint, Standard stated three causes of action, including "violation of public contract code." Standard's closing trial brief filed with the court asserted that there were improper substitutions of subcontractors, both itself and others. Standard's brief in that prior litigation also specifically asserted violations of the Public Contract Code in West Bay's substitution of subcontractors. A District representative testified at trial about subcontractor substitutions and said he approved the substitution of other subcontractors for Standard because Standard was unlicensed. The court found that Standard's "claim [that it was] not properly substituted off the job has . . . not been substantiated." In a case screening form filed on appeal, Standard stated that West Bay illegally substituted subcontractors in violation of the Public Contract Code. Standard later acknowledged, in a proposed stipulation to stay the CFCA action, that the damages action and the CFCA action present the same or similar issues.

The allegations made by Standard in this CFCA action are indeed substantially similar to the allegations made in prior litigation; in fact, they are nearly identical. When pleading its CFCA action, Standard has simply expanded the number of subcontractors West Bay is alleged to have improperly substituted in violation of the Public Contract Code. This minor variation does not detract from the critical fact that alleged Public Contract Code violations in West Bay's substitution of subcontractors on the Project were publicly disclosed. Standard's allegations in its CFCA complaint are substantially similar to those already in the public domain so that the publicly available information was sufficient to place the government on notice of the alleged

fraud, thus meeting *Grayson*'s model of public disclosure. (*Grayson, supra*, 142 Cal.App.4th at p. 748.) In fact, the same particular type of misconduct was alleged in both the prior litigation and this CFCA action, thus meeting even the more restrictive model of the public disclosure standard stated in *Wohlner, supra*, 109 Cal.App.4th at pages 1684–1685. Standard cannot escape the public disclosure bar.

Standard attempts to do so by arguing that, even if its allegations that West Bay knowingly submitted false claims or statements (Gov. Code, § 12651, subd. (a)(1), (2)) are barred, its allegations that West Bay was the beneficiary of an inadvertent submission of a false claim and never disclosed the later-learned falsity of the claim (Gov. Code, § 12651, subd. (a)(8)) are not barred. The argument is untenable. Although Standard asserts violations of several separate provisions of the CFCA, all violations rest on the same material allegations—that West Bay wrongfully obtained District funds after illegally substituting subcontractors on the Project.

■ Standard's qui tam CFCA action was "based upon the public disclosure of allegations or transactions" in a civil hearing and thus barred unless Standard was an original source of the information. (Gov. Code, § 12652, subd. (d)(3)(A).) The bar is interposed even though Standard made the public disclosure in the prior litigation. "[A] qui tam complaint filed after allegations have been publicly disclosed is, by definition, 'based upon' the publicly disclosed information, even if the plaintiff made the disclosure." (*U.S. v. Alcan Electrical & Engineering, Inc.* (9th Cir. 1999) 197 F.3d 1014, 1020.) "[W]here the allegations of the fraud are already public knowledge, the relator confers no additional benefit upon the government by subsequently repeating the fraud allegations in his complaint." (*Biddle, supra*, 161 F.3d at p. 539.) The bar is relaxed only if the qui tam plaintiff was an original source of the disclosure. (Gov. Code, § 12652, subd. (d)(3)(B).) Standard was not an original source, and it does not claim otherwise. To be an original source, a plaintiff must have "direct and independent knowledge of the information on which the allegations are based," have "voluntarily provided the information to the state or political subdivision before filing an action based on that information," and have furnished information that "provided the basis" for the hearing that led to the public disclosure. (Gov. Code, § 12652, subd. (d)(3)(B).) Standard does not meet the requirements of an original source. The trial court properly granted summary judgment to West Bay.[10]

---

[10] West Bay argues that it is also entitled to summary judgment on other grounds that were not addressed by the trial court, and Standard has responded to those arguments. Such argument is unnecessary. If an appellate court wishes to affirm an order granting summary judgment on a ground not relied upon by the trial court, it asks the parties for supplemental

## C. *Attorney fees were properly awarded*

■ The trial court also properly awarded West Bay attorney fees incurred in defending against Standard's frivolous and harassing lawsuit. (Gov. Code, former § 12652, subd. (g)(9).) The CFCA, as currently enacted, provides: "the court may award to the defendant its reasonable attorney's fees and expenses against the party that proceeded with the action if the defendant prevails in the action and the court finds that the claim was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." (Gov. Code, § 12652, subd. (g)(9).) At the time relevant here, the statute allowed fees if the claim was brought *solely*, rather than *primarily*, for purposes of harassment. (Gov. Code, former § 12652, subd. (g)(9); Historical and Statutory Notes, 32E pt. 1 West's Ann. Gov. Code (2011 ed.) foll. § 12652, pp. 391–392; Stats. 2009, ch. 277, § 3.) The court found Standard's claim to be clearly frivolous and brought solely for purposes of harassment. The court assessed fees at $201,483.75. Standard argues that the fee award is unsupported by the law and facts and that the amount is excessive.

■ As a preliminary matter, Standard argues that the court had no subject matter jurisdiction over the case and thus no jurisdiction to award attorney fees. The argument is based on the phrasing of Government Code section 12652, subdivision (d)(3)(A), which states that "[n]o court shall have jurisdiction . . ." over a CFCA action based upon the public disclosure of allegations or transactions in specified sources. Appellant Standard reasons that if the court had no jurisdiction over the action because of the public disclosure bar, then it had no jurisdiction to award fees. Standard acknowledges, however, that the CFCA public disclosure bar may be better understood as the trial court understood it—as a provision denying standing to assert a cause of action rather than as a provision denying subject matter jurisdiction in the fundamental sense. The public disclosure bar of CFCA's federal counterpart, the FFCA, *is* jurisdictional in the fundamental sense. (*Rockwell Int'l Corp. v. United States* (2007) 549 U.S. 457, 467 [167 L.Ed.2d 190, 127 S.Ct. 1397].) It "speaks to 'the power of a particular court' as well as 'the substantive rights of the parties.' " (*Id.* at p. 468.) The CFCA is arguably less clear on this point but the question of jurisdiction need not detain us. Even where a dismissal is deemed jurisdictional, a court may determine matters ancillary to the underlying action such as costs and attorney fees. (*Brown v. Desert Christian Center* (2011) 193 Cal.App.4th 733, 740–742 [122 Cal.Rptr.3d 590] [dismissal upon finding workers' compensation to be the exclusive remedy did not bar later award of attorney fees]; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1290 [240 Cal.Rptr. 872, 743 P.2d 932] [mandatory dismissal under

---

briefing. (Code Civ. Proc., § 437c, subd. (m)(2).) We conclude here that summary judgment was properly granted on the ground relied upon by the trial court and thus do not reach other issues raised by the parties.

five-year statute did not bar later award of attorney fees].) It is also important to note that the public disclosure bar is jurisdictional under the FFCA, yet a court retains jurisdiction following dismissal to award attorney fees. (*U.S. ex rel. Grynberg v. Praxair, Inc.* (10th Cir. 2004) 389 F.3d 1038, 1055–1058 (*Grynberg*); *U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.* (E.D.Pa. 2007) 528 F.Supp.2d 533, 538–540 (*Atkinson*).) It follows that a court imposing the public disclosure bar in a qui tam CFCA action—even if the bar is deemed jurisdictional—may award attorney fees.

■ In a related argument, Standard maintains that West Bay was not a prevailing party eligible for fees because the action was effectively dismissed for lack of subject matter jurisdiction rather than adjudicated on the merits. But full adjudication on the merits is not necessary to achieving prevailing party status for purposes of a fee award. The general statutory definition of a prevailing party includes "a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant." (Code Civ. Proc., § 1032, subd. (a)(4).) The federal courts also provide helpful guidance here. ■ Federal courts interpreting analogous provisions in the FFCA have held that dismissal of a qui tam plaintiff's suit under the public disclosure bar " 'materially alters the legal relationship between the parties' " to the benefit of the defendant, rendering the defendant a prevailing party eligible for attorney fees. (*Atkinson, supra,* 528 F.Supp.2d at pp. 541–543; accord, *Grynberg, supra,* 389 F.3d at p. 1057.) The same is true here. West Bay is a prevailing party.

Standard next argues that the trial court's finding that West Bay is a prevailing party for purposes of awarding attorney fees is inconsistent with another judge's finding in separate litigation between the parties that this CFCA action was not pursued to a favorable termination for purposes of a malicious prosecution action. The argument requires explanation. As we noted earlier, West Bay sued Standard and others for malicious prosecution after judgment in West Bay's favor was entered but before an award of fees. The court struck the complaint because the suit arose from protected speech and petitioning activity, and plaintiff could not show a probability of prevailing on the claim. (Code Civ. Proc., § 425.16.) On the latter point, the court noted that a malicious prosecution action requires a favorable termination on the merits and found that the underlying CFCA action was not resolved on the merits because the case was resolved under the public disclosure bar, and West Bay's innocence was never adjudicated. Standard argues that an award of fees to West Bay as a prevailing party is inconsistent with this other judge's finding that West Bay did not obtain a favorable termination sufficient to support a malicious prosecution action.

█ There is nothing inconsistent with these rulings, which arose in different contexts. One may be a prevailing party for attorney fee purposes yet not have obtained a favorable termination for malicious prosecution purposes. (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 342 [9 Cal.Rptr.3d 97, 83 P.3d 497].) "[A] ' "favorable" termination does not occur merely because a party complained against has prevailed in an underlying action. . . . If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.' " (*Ibid.*) The question whether West Bay was a prevailing party for fee purposes is distinct from the question whether West Bay obtained a favorable termination of the CFCA action for purposes of prosecuting a malicious prosecution action. The former question we have addressed above and have concluded that West Bay is a prevailing party for purposes of a fee award. The latter question is raised in a separate appeal. (*West Bay Builders, Inc. v. Standard Elevator Co., supra*, A126187.)

Having found that West Bay is a prevailing party eligible for fees, the next question presented on this appeal is factual: was Standard's claim clearly frivolous or brought solely for purposes of harassment? The trial court found Standard's claim clearly frivolous because "the same or substantially similar allegations and transactions relied upon by [Standard] in the [CFCA] action were raised in the prior" actions, including allegations of violations of the Public Contract Code that Standard itself made (and lost) in a prior cross-complaint. (Capitalization altered.) The court noted that Standard had previously acknowledged the similarity of the allegations between the prior action and this CFCA action when it filed a case screening form in the appeal of the damages action. Despite that acknowledgment, which implicated the public disclosure bar, Standard continued to prosecute its CFCA action. The trial court stated: "on this record, it can objectively be said that [Standard's] qui tam claim had no reasonable chance of success and that any reasonable attorney would conclude that the action was 'totally and completely without merit.' " (Capitalization altered.) The court also found that Standard's CFCA claim was brought solely for purposes of harassment. The court found that Standard "is seeking to redress private grievances against [West Bay] resulting from [West Bay's] successful conduct in delisting [Standard] from the construction project, and in response to [West Bay's] substantial verdict . . . against [Standard] for breach of that contract."

█ Government Code former section 12652, subdivision (g)(9) permitted a prevailing defendant in a CFCA suit to recover attorney fees if the claim "was clearly frivolous, clearly vexatious," or brought solely (now, primarily) "for purposes of harassment." A parallel federal statute, the FFCA, contains

similar language. (31 U.S.C. § 3730(d)(4).)[11] Because our CFCA was patterned after the federal statute, federal cases construing similarly worded FFCA provisions provide "appropriate" precedent. (*State of California v. Altus Finance, supra*, 36 Cal.4th at p. 1299.) Federal cases construing the FFCA attorney fee provision therefore provide helpful guidance in the construction of the CFCA attorney fee provision. (*County of Kern v. Jadwin* (2011) 197 Cal.App.4th 65 [127 Cal.Rptr.3d 837].)

A claim is clearly frivolous if it is " 'utterly lacking in legal merit and evidentiary support.' " (*Atkinson, supra*, 528 F.Supp.2d at p. 543.) Stated otherwise, a claim is clearly frivolous "when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law." (*Mikes v. Straus* (2d Cir. 2001) 274 F.3d 687, 705 (*Mikes*).) Thus, a qui tam plaintiff's action dismissed under the public disclosure bar is clearly frivolous where the plaintiff's claim that he qualified as a proper relator "clearly had no reasonable chance of success." (*U.S. ex rel. Vuyyuru v. Jadhav* (4th Cir. 2009) 555 F.3d 337, 356 (*Vuyyuru*).) As for harassment, the Ninth Circuit has held that an action is brought for purposes of harassment "when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." (*Pfingston v. Ronan Engineering Co.* (9th Cir. 2002) 284 F.3d 999, 1006.) Some courts have observed that "[t]he award of fees under the False Claims Act is reserved for rare and special circumstances." (*Id.* at pp. 1006–1007.) We review the trial court's decision for abuse of discretion. (*County of Kern v. Jadwin, supra*, 197 Cal.App.4th 65; *Mikes, supra*, at p. 704.)

The court did not abuse its discretion in finding Standard's CFCA claim to be clearly frivolous. Application of the public disclosure bar was patent. This is not a case where a qui tam plaintiff brought a CFCA action only to discover later that similar allegations had been made in a hearing or a news account of which the plaintiff was not aware. Here, Standard itself alleged illegal substitution of subcontractors on the Project in violation of the Public Contract Code in a publicly filed cross-complaint against West Bay and, when it lost that action, repeated those same allegations in this CFCA action. As noted earlier, "a qui tam complaint filed after allegations have been publicly disclosed is, by definition, 'based upon' the publicly disclosed information, even if the plaintiff made the disclosure." (*U.S. v. Alcan Electrical & Engineering, Inc., supra*, 197 F.3d at p. 1020.) "[W]here the allegations of the fraud are already public knowledge, the relator confers no additional benefit

---

[11] The federal statute reads: "If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." (31 U.S.C. § 3730(d)(4).)

upon the government by subsequently repeating the fraud allegations in his complaint." (*Biddle, supra*, 161 F.3d at p. 539.) No reasonable person could think that the allegations in the prior litigation and this CFCA were distinct, and thus outside the public disclosure bar, given the near identity of the allegations. In fact, there is evidence that Standard itself acknowledged the similarity of the allegations in an appellate case screening form and a proposed stipulation for a stay of the CFCA action. Of course, the public disclosure bar would not apply had Standard been an original source, but it was not an original source and had no possible claim as one. Plaintiff Standard's claim that it qualified as a proper qui tam plaintiff "clearly had no reasonable chance of success." (*Vuyyuru, supra*, 555 F.3d at p. 356.) Standard's CFCA claim was clearly frivolous.

There is also strong evidence that Standard's CFCA claim was brought solely for purposes of harassment. As noted above, the trial court found that Standard "is seeking to redress private grievances against [West Bay] resulting from [West Bay's] successful conduct in delisting [Standard] from the construction project, and in response to [West Bay's] substantial verdict . . . against [Standard] for breach of that contract." The record supports that finding.

It will be recalled that West Bay removed Standard as a subcontractor from the Project when it learned that Standard was unlicensed, lied about its references, and could not secure bonds for its work. West Bay substituted other subcontractors to complete the Project and sued Standard to recover as damages the amount paid to complete the work above the amount bid by Standard. Standard cross-complained upon allegations that it and other subcontractors were substituted in violation of the Public Contract Code. The court found Standard liable for fraud, negligent misrepresentation, and promissory estoppel, and awarded West Bay damages of $119,901 plus prejudgment interest.[12] The court found that Standard's claim that it was "not properly substituted off the job has . . . not been substantiated" and entered judgment for West Bay on Standard's cross-complaint. Standard filed a motion for new trial seeking to overturn West Bay's judgment against it and, in the same month, filed this CFCA action against West Bay. As discussed earlier, the allegations made by Standard in this CFCA action are nearly identical to the ones made, and lost, in the prior litigation. The course of events strongly suggests that Standard filed this action in retaliation for West Bay's success in the prior litigation and to relitigate the propriety of subcontractor substitutions on the Project. The trial court rightly found that Standard's CFCA claim was brought solely for purposes of harassment.

---

[12] There is some confusion in the record as to the amount of damages but $119,901 appears to be the correct amount.

As a final point, Standard argues that the fee award was excessive in amount because West Bay delayed filing its summary judgment motion until three years after the action was initiated, thus accumulating unnecessary costs for discovery and motion practice. The argument is factually unsupported. There is simply no evidence in the record that West Bay protracted the litigation. West Bay appears to have moved as expeditiously as possible to resolve the case. We note, for instance, that West Bay filed its summary judgment motion in May 2008, within five months of answering Standard's second amended complaint in January 2008. The amount of attorney fees awarded was not excessive.

## III. DISPOSITION

The judgment is affirmed. The postjudgment order awarding respondent attorney fees is affirmed. Respondent shall recover costs incurred on each appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278(c)(1).)

Ruvolo, P. J., and Rivera, J., concurred.

A petition for a rehearing was denied August 15, 2011, and appellant's petition for review by the Supreme Court was denied October 12, 2011, S196056.