Filed 3/13/24  Green v. Green CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROBERT GREEN,<br><br>     Plaintiff and Appellant,<br><br>     v.<br><br>PAULA GREEN,<br><br>     Defendant and Respondent. | B321805<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV05251) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, William F. Fahey, Judge. Affirmed.

Beach Cities Law Group, Frank Sandelmann and Brennan Mitch for Plaintiff and Appellant.

Caldwell Law Firm and Larry J. Caldwell for Defendant and Respondent.

_____

Appellant Robert Green contends substantial evidence does not support the judgment in favor of respondent Paula Green on his claim that Paula made false claims in multiple fee waiver applications.[1] Robert also challenges the trial court's finding his "claim was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment" when it granted Paula's motion for attorney's fees under Government Code section 12652, subdivision (g)(9)(A).

We find substantial evidence supports the trial court's finding that Paula did not knowingly make false claims in her fee waiver applications. We also find substantial evidence supports the finding that Robert's claims were frivolous and brought solely to harass Paula in that they had no reasonable chance of success and were brought as part of a "sibling feud."

We affirm the judgment and order.

## BACKGROUND

The parties in this case are siblings who have litigated several claims arising from the probate of their father's estate. The trial court provided some background in its June 21, 2021 order disqualifying sibling Attorney Matthew Green from representing his brother, Robert:

"This case represents the latest chapter in a sibling feud which goes back several decades. As particularly pertinent to the instant case, a large judgment against Paula Green was entered on February 27, 2018 in the Probate Court. *See* In re the Matter of Irvin Green, et al., 16STPB01322. The judgment provided that

---

[1]     We refer to the parties who share a surname by their first names for ease of reference and not out of disrespect.

Paula's brothers, Matthew Green (who is a lawyer) and Robert Green, were the prevailing parties. Thereafter, Matthew and Robert have vigorously pursued collection efforts against Paula's assets."

The trial court observed, "More recently, Matthew and Robert decided to try a new strategy against their sister. On February 10, 2020, Matthew filed the instant 'qui tam' complaint in the name of Robert which purports to be on behalf of the State of California and the County of Los Angeles. The basis of this complaint is that Paula allegedly obtained several court fee waivers based on fraudulent claims of financial distress. The complaint was initially filed under seal to permit the California Attorney General's Office to decide if it had any interest in intervening. Not surprisingly, the Attorney General declined to get involved in this family dispute. On December 9, 2020, the case was unsealed."

During the three-day bench trial, Robert attempted to prove his qui tam[2] complaint, seeking to establish Paula provided false information in five fee waiver applications. In these applications Paula indicated her gross monthly household income was below $1,761.46, and she did not have sufficient income to pay her household's basic needs and the court fees. Robert provided business records to show Paula's monthly income exceeded the $1,761.46 amount because she received numerous transfers of funds from two companies, Glaser & Weil, LLC, and Fumar USA, LLC. Robert also introduced expert testimony that

---

[2]     "*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" (*Rockwell Int'l Corp. v. United States* (2007) 549 U.S. 457, 463, fn. 2.)

3

such payments are presumed to be taxable income unless they qualify for an exception under the Internal Revenue Code. However, the expert conceded he could not opine that the transfers from the companies were income to Paula without examining the companies' general ledgers.

Paula testified the companies were real estate companies she operated with her mother and the funds she received were the return of her initial capital contributions. She maintained she had no income and relied solely on these returns of her prior contributions for household expenses.

The trial court found in favor of Paula. In its statement of decision, the trial court concluded Robert had not met his burden to show the transfers were income. It also noted Paula testified she had no intent to defraud with her fee waiver applications.

Subsequently, the court granted Paula's motion for attorney's fees, finding the lawsuit was frivolous and brought to harass Paula. As a result, Robert was ordered to pay attorney's fees of $83,700 to Paula.

Robert filed timely notices of appeal of the judgment and the attorney's fees order.[3]

## CONTENTIONS ON APPEAL

Robert argues a lack of substantial evidence supports the findings that the monetary transfers to Paula from the LLC's did not constitute income. Additionally, he contends it was an error of law to require him to prove specific intent to defraud.

---

[3] The notice of appeal for the judgment was filed June 20, 2022, and the notice of appeal for the attorney fees order was filed September 15, 2022. The appeals were consolidated on February 27, 2023.

4

Finally, Robert claims the attorney's fees order should be reversed, asserting his case was not clearly frivolous, vexatious, or brought primarily for harassment, as required by Government Code section 12652, subdivision (g)(9)(A).

## DISCUSSION

### I.      Applicable law and standard of review

On review of a judgment entered after a bench trial, "'we review the entire record in the light most favorable to the judgment to determine whether there are sufficient facts, contradicted or uncontradicted, to support the judgment.'" (*Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270 (*Patricia A. Murray Dental Corp.*).)

We review findings of fact in the statement of decision for substantial evidence. (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.) Under this test, "'"[W]e are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment . . . . 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing*.' [Citation.] All conflicts, therefore, must be resolved in favor of the respondent."'" (*Patricia A. Murray Dental Corp., supra*, 19 Cal.App.5th at pp. 269-270.)

"Substantial evidence is evidence that is reasonable and credible. In evaluating the evidence, we accept reasonable inferences in support of the judgment and do not consider whether contrary inferences may be made from the evidence.'"

(*Patricia A. Murray Dental Corp., supra*, 19 Cal.App.5th at p. 270.)

Here, the question whether Robert can be ordered to pay attorney's fees under Government Code section 12652, subdivision (g)(9)(A), depends on a finding that his "claim was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." This is a mixed question of law and fact and, when the question is predominantly factual, as it is here, the determination is reviewed under the substantial evidence test. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

## II.    California's False Claims Act (CFCA)

Robert claims Paula made false statements about her income to obtain fee waivers from both the Los Angeles Superior Court and the Second District Court of Appeal. He brought this action under CFCA seeking remedies on behalf of the State of California and the County of Los Angeles, as these fees would have been paid to these public entities.

"The [CFCA] provides that any person who commits certain acts against the state or a political subdivision is liable to the state or political subdivision for treble damages. (Gov. Code, § 12651, subd. (a).) Among the prohibited acts are knowingly presenting or causing to be presented 'a false claim for payment or approval' by the state or a political subdivision, and knowingly making or using or causing to be made or used 'a false record or statement to get a false claim paid or approved.' (*Id.*, § 12651, subd. (a)(1), (2).) The [CFCA] also provides that any person who commits such an act may be liable for a civil penalty of up to $10,000 for each 'false claim.' (*Id.*, § 12651, subd. (a).) Thus, the act provides for both treble damages for certain acts and a civil

6

penalty for each 'false claim.'" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 734-735, fns. omitted.)

Thus, the essential elements of Robert's CFCA claim are (1) Paula filed for and received fee waivers and (2) Paula knowingly made false statements in those fee waiver applications to avoid paying required court fees. (See *Mao's Kitchen, Inc. v. Mundy* (2012) 209 Cal.App.4th 132, 148.)

When an individual qui tam plaintiff initiates an action pursuant to Government Code section 12652, subdivision (c)(1), the qui tam plaintiff brings the action "for the person and . . . for a political subdivision in the name of the political subdivision." Thus, the individual brings the action on behalf of the individual and the government entity, although the government entity is only a nominal plaintiff at the time of filing.

## III. Substantial evidence supports the finding Paula did not knowingly make false statements in her fee waiver applications

Robert, as the qui tam plaintiff, argued Paula obtained fee waivers by making false statements about her income. He contends the trial court erred by requiring him to demonstrate Paula had the specific intent to defraud in her applications.

Provisions of the CFCA require Robert to show Paula had made false claims "knowingly." (Gov. Code, § 12651, subd. (a)(4), (7).) Under the CFCA, "knowingly" means one "[h]as actual knowledge of the information," "[a]cts in deliberate ignorance of the truth or falsity of the information," or "[a]cts in reckless disregard of the truth or falsity of the information." (Gov. Code, § 12650, subd. (b)(3).) Proof of specific intent to defraud is not required. (*Ibid.*)

CFCA "was enacted in 1987 and was modeled on the federal False Claims Act (31 U.S.C. § 3729 et seq.) . . . ." (*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 973.) Accordingly, "it is appropriate to turn to federal cases for guidance in interpreting the [CFCA]." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 802.) "In defining knowingly, Congress attempted 'to reach what has become known as the "ostrich" type situation where an individual has "buried his head in the sand" and failed to make simple inquiries which would alert him that false claims are being submitted.' [Citation.] Congress adopted 'the concept that individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek.'" (*U.S. v. Bourseau* (9th Cir. 2008) 531 F.3d 1159, 1168.) However, "Congress specifically expressed "'its intention that the act not punish honest mistakes or incorrect claims submitted through mere negligence."'" (*U.S. ex rel. Hefner v. Hackensack University Medical Center* (3d Cir. 2007) 495 F.3d 103, 109.)

Paula claimed her income was low enough that her filing fees should be waived. The process for obtaining a fee waiver is governed by Government Code sections 68630–68641 and California Rules of Court, rules 3.50–3.58. Applicants are required to use form FW-001 to explain their need for a waiver.

Paula stipulated she had applied for and obtained fee waivers in five cases. In the applications, she used form FW-001 and checked a box in paragraph 5, subsection (b), indicating her gross monthly household income was less than the $1,761.46 amount listed on the application for a two-person household (Paula and her mother). Paula also checked the box in paragraph

8

5, subsection (c), indicating she did not have enough income to pay for her household's basic needs and the court fees. Based on these statements, she qualified for the fee waivers.

To show Paula violated the CFCA, it was Robert's task to show Paula "knowingly" included false statements in her fee waiver. This required evidence Paula had actual knowledge her household monthly income exceeded $1,761.46, that she acted in deliberate ignorance of the truth or falsity of the information, or acted in reckless disregard of the truth or falsity of the information.

Robert submitted bank statements showing Paula received transfers of funds from two companies, Glaser & Weil, LLC, and Fumar USA, LLC. However, the statements alone, without facts identifying and explaining each transfer, fail to establish Paula knowingly made false statements about her monthly household income.

Robert attempted to use expert testimony from Steven Jager, a certified public accountant, to meet his burden. Jager opined that, for federal tax purposes, payments received are presumed to be taxable income unless they qualify for an exception. However, Jager admitted he had no experience with form FW-001 and offered no opinion whether the federal tax definition of "taxable income" could be used to define "monthly household income" on form FW-001. Jager also admitted he could not render an opinion that the transfers from the named companies were income to Paula without reviewing the companies' general ledgers, which he had not done.[4]

---

[4]     Jager testified that withdrawals of capital from an LLC are not income.

Paula's testimony characterized the transfers as returns of the capital contributions she made to her real estate businesses. She stated Glaser & Weil, LLC, was a real estate business she and her mother operated. She added that her mother and she had made capital contributions of $327,337.33 to the company. Paula also stated Fumar USA, LLC, was a real estate business to which she had transferred $165,000 from Glaser & Weil, LLC, as a capital investment. Paula considered none of the transfers from Glaser & Weil, LLC, to be income because she had contributed capital to the company. When asked, Paula testified she had no income, and her sole source of money was from the two companies that she used to pay household expenses.

If determined to be credible, this is substantial evidence that Paula believed the money transfers from the companies were a return of her capital contributions and not income. No evidence was presented to show Paula had actual knowledge the money transfers increased her "household monthly income" to exceed $1,761.46 or that the transfers were income according to form FW-001 such that she could pay her household expenses and court fees. Paula's testimony showed she believed she was recovering her own money from the real estate businesses.

Paula's testimony also showed she had no knowledge the companies were paying her money that could be considered income, e.g., payment for services or goods she provided to them. Instead, her testimony was she believed she was recovering capital contributions from her businesses. Robert did not offer evidence that Paula acted in deliberate ignorance of the truth or falsity of the information about her income or that she acted in reckless disregard of the truth or falsity of the information about her income. Robert also failed to provide evidence to show Paula

10

"knowingly" made false statements in her fee applications. Robert's contention that the trial court implicitly required him to show specific intent to defraud does not identify reversible error.

Therefore, Paula's testimony supports the trial court's finding that Paula did not violate CFCA.

## IV. Substantial evidence supports attorney's fees award to Paula

Robert also challenges the order directing him to pay Paula $83,700 in attorney's fees. The order was issued pursuant to Government Code section 12652, subdivision (g)(9)(A), which authorizes a trial court to award reasonable attorney's fees to a prevailing party when the false claim action is "clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment."

The trial court found Robert's claim frivolous and harassing. "A claim is clearly frivolous if it is '"utterly lacking in legal merit and evidentiary support."' [Citation.] Stated otherwise, a claim is clearly frivolous 'when, viewed objectively, it may be said to have no reasonable chance of success, and present no valid argument to modify present law.'" (*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc., supra*, 197 Cal.App.4th at p. 982.) Harassment too has been found "when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." (*Pfingston v. Ronan Engineering Co.* (9th Cir. 2002) 284 F.3d 999, 1006.)

Robert offered no evidence of Paula's monthly household income and relied on evidence of fund transfers from businesses Paula operated, without providing facts needed to establish these transfers were income. No reasonable person would think this to

be sufficient to establish Paula violated CFCA in her fee waiver applications. As a result, Robert's claim had no reasonable chance of success.

Substantial evidence also supports the finding that Robert's claim was brought solely for the purpose of harassment. As the trial court noted, Robert's case is "the latest chapter in a sibling feud which goes back several decades." The trial court also found the lawsuit had "little to do with the interests of the State of California and/or the County of Los Angeles, but more to do with Matthew and Robert's desire to perpetuate the bitter battle with their sister." In the context of a "sibling feud," Robert's pursuit of a claim like this, with no chance of success, must have been intended to annoy or embarrass Paula.

Robert claimed, too, that Paula's motion for sanctions was untimely. The trial court rejected this argument, finding no prejudice as Robert was able to file and serve opposition papers, despite the motion being "late by about one or two days."

"'It is well settled that the appearance of a party at the hearing of a motion and his or her opposition to the motion on its merits is a waiver of any defects or irregularities in the notice of motion. [Citations.] This rule applies even when no notice was given at all. [Citations.] Accordingly, a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective.'" (*Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697.) Robert filed opposition papers that addressed the merits of Paula's motion. He did not ask for a continuance. He did not show prejudice. He had the opportunity to present argument at the

hearing. As a result, he waived any defects or irregularities in the notice of motion.

## DISPOSITION

We affirm the trial court's judgment and order of attorney's fees to respondent, who is also awarded her costs of appeal.

_____

CHAVEZ, J.

We concur:

_____

LUI, P. J.

_____

ASHMANN-GERST, J.