Filed 6/10/15  Rogers v. Wells Fargo Bank CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAURA ROGERS,<br><br>　　　　Plaintiff and Appellant,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>　　　　Defendant and Respondent. | A141416<br><br>(Contra Costa County<br>Super. Ct. No. MSC1300953) |

Plaintiff Laura Rogers appeals from the judgment of dismissal entered following the sustaining of a general demurrer to her first amended complaint.  Plaintiff sued to prevent defendant Wells Fargo Bank, N.A. (Wells Fargo) from selling her property at a nonjudicial foreclosure sale after she defaulted on two loans secured by deeds of trust.  We conclude the trial court correctly determined that each of her causes of action are legally deficient, and we affirm.

**BACKGROUND AND PROCEDURAL HISTORY**

**I.     *Violations of Rules of Court***

We first address the many flaws in plaintiff's briefing of her appeal.  The Rules of Court require litigants to "[s]upport *any* reference to a matter in the record by a *citation to the volume and page number of the record* where the matter appears."  (Cal. Rules of Court, rule 8.204(a)(1)(C), italics added.)[1]  Thus, stating facts without providing any record cite, or citing to only a document rather than to a page, violates this rule.  (See,

---

[1] All further rule citations are to the California Rules of Court.

e.g., *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166 ["plaintiffs repeatedly cite to 170 pages of their motion to vacate without directing us to specific pages"]; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 ["Sections of the statement of facts in the appellant's opening brief include no record citations at all."].) When a litigant repeatedly provides no page citations to the record, the rule violation is "egregious[]," significantly burdening the opposing party and the court. (*Evans v. Centerstone Development Co.,* at pp. 166–167.)

In this appeal, plaintiff submitted an opening brief totaling 52 pages that fails to include any meaningful page-specific citations to the record.[2] Instead, the brief provides "citations" such as "Complaint, ¶107, " or makes statements such as "[f]acts supporting Appellant's claims are set forth in the above-cited documents, i.e., the Complaint, FAC, and oppositions to Wells Fargo's first and second demurrers (above, which are incorporated herein by reference)"—asking this court to wade through nearly 300 pages without guidance. In short, plaintiff's briefing egregiously violates the Rules of Court and provides little help in analyzing the merits of her challenges to the judgment.

These violations appear to be part of a pattern. At oral argument in a prior case in this court, *Sato v. Bank of America* (Mar. 2, 2015, A138944) [nonpub. opn.] (*Sato*)), Andrew R. Martin—who signed the opening appellate brief here and presumably drafted it—attempted to excuse identical rule violations by claiming that *Sato* was his "first appellate case." In our unpublished opinion, we made the following observation: "To say counsel was being less than candid with the court is an understatement—this was an outright mistruth. A quick search, by State Bar number, of the dockets of the First District Court of Appeal, alone, showed 17 matters initiated between April 2009 and October 2014, some completed[,] some still active, in which Martin was at least one counsel of record. Thus, he has at least five-plus years of experience with appeals. Moreover, Martin has been on briefs submitted to this court in these other cases which

---

[2] In the "Procedural History" section, the opening brief merely provides citations to the entire text of the major documents involved in this case, such as the complaints, the demurrers, and the oppositions to the demurrers.

not only suffer from similar defects, they predate the February 2014 opening brief in this case. For instance, the only record citation in the October 2013 opening brief in *Jordon-Mendoza v. JPMorgan Chase Bank N.A.* (A138304, app. pending) is in a footnote on page three, and it is to the entire complaint; nary a page cite is given. Even a 'first time' appellate lawyer is expected to read and comply with the Rules of Court. Martin's transgressions, as an experienced appellate lawyer, are inexcusable." (*Sato*, pp. *2–*3, fns. omitted.)

The consequences of these rule violations can be severe. "[I]t is counsel's duty to point out portions of the record that support the position taken on appeal," and "[t]he appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768. Accordingly, "any point raised that lacks citation may, in this court's discretion, be deemed waived" or disregarded. (*Ibid.*; see also *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["To further complicate review, plaintiffs make numerous factual assertions in their briefs without record citation" but "[w]e are entitled to disregard such unsupported factual assertions"]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 60 (*Lueras*) [rule applies in demurrer context]; *Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal.App.4th 1441, 1453 (*Hernandez*) [" ' " 'an appellate court may disregard any factual contention not supported by a proper citation to the record,' " ' " italics omitted]; *Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 788 ["No record citation is given for this assertion, therefore we disregard it."].)

Plaintiff's 11-page "Introduction and Statement of Facts" section makes no reference to the clerk's transcript at all. For example, she states that the pooling and servicing agreement involved here "required each transaction to be a 'true sale' supported by a delivery and acceptance certificate from the receiving party, an endorsement of the Note and an assignment of the [deed of trust]." This assertion, like all the factual assertions in this portion of her brief, is unsupported by any citation to the record on appeal. The best she offers is a few citations to paragraphs of her complaint, again without any citation to where those paragraphs appear in the record. This does not

comply with the requirements of rule 8.204(a)(2)(C). (See *State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.* (2011) 197 Cal.App.4th 963, 968 [failure to provide a statement of facts as required by rule 8.204(a)(2)(C)]; *Lopez v. C.G.M. Development, Inc.* (2002) 101 Cal.App.4th 430, 435–436, fn. 2 [party that provides inadequate statement of facts "cannot be heard to complain" that appellate court overlooked any material facts on review of summary judgment].)

The opening brief's argument sections are equally devoid of any references to the appellate record to support her factual assertions. Additionally, while she includes a table of contents and a table of authorities, her tables do not contain the page numbers showing where the titles and authorities appear in her brief.

When a party's brief fails to comply with the requirements of rule 8.204, the appellate court may decline to file it, return it for corrections, strike it with leave to file a new brief, or "[d]isregard the noncompliance." (Rule 8.204(e)(2)(A–C).) Plaintiff's current attorney, who submitted her reply brief, acknowledged the defects in the opening brief and stated that he would submit an application to file a corrected brief.[3] He submitted his application too late, after the matter was set for argument. We have discretion pursuant to rule 8.204(e)(2)(B) to strike plaintiff's brief and order her to file an amended version that attempts to correct her errors. However, based on our review of her briefs and the record, we do not think doing so would change any of our conclusions about the merits of her appeal.

Given that not a single factual assertion in plaintiff's opening brief is supported in a manner that complies with the Rules of Court, we disregard these assertions and base

---

[3] To the extent plaintiff attempts to correct these deficiencies within her reply brief, we need not consider arguments that she could have properly raised, but failed to do, in her opening brief. (See *American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 ["[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument"]; *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [" '[T]he rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before' . . . ."].)

our understanding of the parties' dispute on the portions of the record correctly cited by Wells Fargo. In large part, this has not hampered our review of the merits of the judgment. However, as we discuss, the failure to provide proper record citations in connection with some issues has resulted in waiver of those issues on appeal. Further, Martin is again put on notice that we will consider imposing sanctions should he file any appellate brief in the future in this court bereft of proper citations to the record.

For these reasons, we conclude plaintiff does not meet her burden, as the appellant, of establishing that the trial court affirmatively erred in these rulings from which she properly appealed. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Further, we have performed our duty to independently examine the pleading to determine whether the facts alleged in plaintiff's first amended complaint state a cause of action under any possible legal theory. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) We conclude that they do not.

## II.     *Alleged Facts*

The operative pleading, plaintiff's 47-page verified first amended complaint (FAC), alleges the following causes of action: (1) declaratory relief, (2) breach of implied covenant of good faith and fair dealing, (3) deceit—promise made without intent to perform, (4) deceit—intentional misrepresentation, (5) fraud and deceit—suppression of material fact, (6) fraud and deceit—negligent misrepresentation, (7) promissory estoppel, and (8) violation of Business & Professions Code section 17200 et seq.

In 2004, plaintiff, a Marin County resident, purchased improved real property in Walnut Creek (the Property).[4]

---

[4]  Plaintiff and/or her husband own or owned properties at (1) 209 2nd Street, Isleton, (2) 701 Price Street, Pismo Beach, (3) 2602 E. Olivera Road, Concord, (4) 2261 Huron Drive, Concord, and (5) 5112 Concord Boulevard, Concord. Her husband, William, individually owns two additional properties:  1240 North Gate Road, Walnut Creek, and 2813 Reagan Court, Antioch. Plaintiff and her husband are also residents of Marin County. With such an accumulation of real property, plaintiff could be characterized as a "sophisticated" real estate investor aware fully of the ramifications of financing such deals.

In April 2007, plaintiff refinanced the property with a $1,982,500 loan from American Brokers Conduit (ABC). She signed a promissory note and a deed of trust encumbering the property. The deed of trust named Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary solely as nominee for the lender ABC, and its successors and assigns.

Shortly thereafter, plaintiff also obtained a $457,500 loan from Citizens Community Bank, secured by a second deed of trust on the Property.

In July 2009, plaintiff and her husband filed a Chapter 11 petition in bankruptcy. The verified petition stated that Wells Fargo held the $1,982,500 lien on the Walnut Creek property. Plaintiff and her husband voluntarily dismissed their bankruptcy case in July 2010.

In October 2010, Default Resolution Network, acting as the beneficiary's agent, recorded a notice of default under the first deed of trust on the Property. A month later, MERS recorded an assignment of its interest in that first deed of trust to HSBC Bank USA, N.A., as trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-11.[5]

Fidelity National Title Co. (Fidelity) recorded an initial notice of trustee's sale in January 2011. A substitution of trustee was recorded on April 11, 2013, naming Fidelity as the new trustee. That same day, Fidelity recorded a second notice of trustee's sale. No trustee's sale has yet been held.

### III.    *Procedural History*

On May 2, 2013, plaintiff filed her initial complaint. The document is 56 pages long, alleging 14 causes of action against Wells Fargo and Fidelity.

On May 20, 2013, plaintiff filed a motion for a preliminary injunction seeking to enjoin Wells Fargo from foreclosing on the Property.

---

[5] The FAC alleges that MERS recorded a second assignment of its interest in the same deed of trust to the same assignee on March 6, 2012.

6

On June 25, 2013, Wells Fargo filed a demurrer to the complaint on the ground that each cause of action failed to state facts sufficient to constitute any cause of action against it.

On September 23, 2013, the trial court sustained the demurrer to all causes of action, five without leave to amend, the rest with leave to amend.[6]

On October 10, 2013, plaintiff filed the FAC, restating the nine remaining causes of action.

On November 22, 2013, Wells Fargo filed a demurrer to the FAC.

On February 10, 2014, the trial court heard and sustained Wells Fargo's demurrer without leave to amend as to the entire FAC.

On March 5, 2014, the trial court entered a formal order sustaining the demurrer without leave to amend.

On March 27, 2014, plaintiff filed a notice of appeal from the order sustaining the demurrer and from an order denying her motion for preliminary injunction.[7]

On April 15, 2014, the trial court filed a judgment of dismissal. That same day, the court filed its order dissolving a temporary restraining order and denying plaintiff's renewed motion for a preliminary injunction.

---

[6] Wells Fargo successfully demurred to the original complaint. The FAC omits the claims for which leave to amend was denied: injunction, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and wrongful foreclosure.

[7] Plaintiff filed her notice of appeal after the trial court sustained the demurrer without leave to amend but before entry of judgment. Because no appeal lies from an order sustaining a demurrer, even without leave to amend, but rather from a subsequent judgment of dismissal, the notice of appeal is premature. (*Gu v. BMW of North America, LLC* (2005) 132 Cal.App.4th 195, 202; *Bame v. City of Del Mar* (2001) 86 Cal.App.4th 1346, 1353, fn. 5.) We liberally construe plaintiff's notice of appeal as an appeal from the subsequently entered judgment. (*Gu,* at p. 202 ["notice of appeal ' " 'shall be liberally construed in favor of its sufficiency.' " ' [Citations.] Therefore, where it is 'reasonably clear that the appellant intended to appeal from the judgment and the respondent would not be misled or prejudiced,' the notice of appeal may be interpreted to apply to an existing judgment"]; *Bame,* at p. 1353, fn. 5.; see rule 8.100(a)(2).)

7

# DISCUSSION

## I.    *Standard of Review*

"Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiff's . . . amended complaint. ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed."  [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]' [Citation.]  ' "[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective."  [Citation.]'  [Citations.]"  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  " 'However, we . . . may disregard any allegations that are contrary to the law or to a fact of which judicial notice may be taken.' "  (*Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 734; *Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 166.)

"While the decision to sustain or overrule a demurrer is a legal ruling subject to de novo review on appeal, the granting of leave to amend involves an exercise of the trial court's discretion.  [Citations.]  When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment.  If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment.  [Citations.]  A trial court abuses its discretion if it sustains a demurrer without leave to amend when the plaintiff shows a reasonable possibility to cure any defect by amendment.  [Citations.]  If the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. [Citation.]"  (*Trader Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 43–44.)

The plaintiff's "burden of demonstrating a reasonable possibility to cure any defect" is not pro forma.  " 'To satisfy that burden on appeal, a plaintiff "must show in

8

what manner he can amend his complaint and how that amendment will change the legal effect of the pleading." [Citation.] . . . The plaintiff must clearly and specifically set forth . . . factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary.' " (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1491 (*Rossberg*), quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43–44.)

## II.     *The Legal and Statutory Framework*

We set forth the legal and statutory framework for cases based on a wrongful foreclosure scenario. "The financing or refinancing of real property in California is generally accomplished by the use of a deed of trust." (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 507 (*Jenkins*).) "A deed of trust . . . conveys title to real property from the trustor-debtor to a third party trustee to secure the payment of a debt owed to the beneficiary-creditor under a promissory note. [Citations.] The customary provisions of a valid deed of trust include a power of sale clause, which empowers the beneficiary-creditor to [foreclose] on the real property security if the trustor-debtor fails to pay back the debt owed under the promissory note. [Citations.]" (*Id*. at p. 508.)

"[A]lthough the deed of trust technically conveys title to the real property from the trustor-debtor to the trustee, the extent of the trustee's interest in the property is limited to what is necessary to enforce the operative provisions of the deed of trust." (*Jenkins, supra,* 216 Cal.App.4th at p. 508.) Generally, a deed of trust requires the trustee only to perform one of two "mutually exclusive duties: (1) should the trustor-debtor default on the debt, the trustee must initiate foreclosure on the property for the benefit of the beneficiary-creditor or (2) should the trustor-debtor satisfy the secured debt, the trustee must reconvey title to the real property back to the trustor-debtor, extinguishing the security device." (*Ibid*.) Despite the security interest the deed of trust creates, "the trustor-debtor retains all incidents of ownership with regard to the real property, including the rights of possession and sale." (*Ibid*.)

9

When a trustor-debtor defaults "on a debt secured by a deed of trust, the beneficiary-creditor may elect to judicially or nonjudicially foreclose on the real property security.  [Civil Code] [s]ections 2924 through 2924k set forth a 'comprehensive framework for the regulation of a *nonjudicial* foreclosure sale pursuant to a power of sale contained in a deed of trust.'  [Citation.]"  (*Jenkins, supra,* 216 Cal.App.4th at p. 508, original italics.)  "To initiate the nonjudicial foreclosure process, the 'trustee, mortgagee, or beneficiary, or any of their authorized agents,' must record a notice of default and election to sell.  [Citation.]"  (*Id.* at p. 509.)  The "mortgagee, trustee, or other person authorized to take the sale" must then wait three months before proceeding with the sale. (Civ. Code, § 2924, subd. (a)(3).)  "After the three-month period has elapsed, a notice of sale must be published, posted, recorded and mailed 20 days before the foreclosure sale." (*Jenkins,* at p. 509.)  The property must be sold at a public auction to the highest bidder, but before the sale occurs the statutory scheme provides the trustor-debtor with several opportunities to cure the default and avoid losing the property.  (*Ibid.*)

"The statutory scheme authorizing nonjudicial foreclosures ' " 'cover[s] every aspect of [the] exercise of [a] power of sale contained in a deed of trust.'  [Citation.] . . . [Citation.]" '  [Citation.]  ' "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute."  [Citations.]'  [Citation.]"  (*Rossberg*, *supra*, 219 Cal.App.4th at p. 1492.

## III. *The Demurrer Was Properly Sustained*

### *A. Introduction*

Before reviewing the individual causes of action in the original complaint and FAC on their substantive merits, we make certain observations on the two pleadings.  The caption in each complaint is "Laura Rogers v. Wells Fargo Bank etc."  However, at the bottom of each page of each complaint is the footer "Cappicilli v. J.P. Morgan Chase Bank et al."  At the very least, this suggests a "lifting" of pleaded allegations (to what degree we are unsure) of the claims in each complaint from another source.  The possible pleading of generic allegations in the complaint at issue here may also answer the trial

court's concerns regarding the absence of material facts supporting the causes of action in each of the filed complaints.[8]

## B. Fraud and Deceit

Plaintiff's seventh, eighth, ninth, and tenth causes of action all assert varieties of fraud or deceit. (1 CT 59-69; 3 CT 372-382.) "The elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages. [Citation.]" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469 (*Cansino*).) All elements of fraud must be pleaded with particularity, meaning a plaintiff must plead facts which " ' "show how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645); see also *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 234 ["every element" must be pleaded].) "Further, when a plaintiff asserts fraud against a corporation, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' [Citation.]" (*Cansino,* at p. 1469.)

While less specificity is required "when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217), a defendant's "knowledge about their own communications" does not "relieve[] [a plaintiff] of [the] obligation to provide any factual averments at all." (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 783 (*Goldrich*).) A plaintiff must still allege "the facts constituting every element of the fraud . . . , and [a] claim cannot be salvaged by references to the general policy favoring the liberal construction of pleadings." (*Id*. at p. 782, italics

[8] This drafting feature is further manifested in the body of each draft where plaintiff makes reference to Chase Bank's financial successes even though Wells Fargo is the named defendant. (Chase *is* the named financial institution in the case identified in the footer.) There are other references in the pleadings that seem inconsistent with aspects of this case.

omitted.) "Even in a case involving numerous oft-repeated misrepresentations, the plaintiff must, at a minimum, set out a representative selection of the alleged misrepresentations sufficient to permit the trial court to ascertain whether the statements were material and otherwise actionable," providing information about "what was said or by whom" and "in what manner." (*Id.* at. p. 783.)

We have reviewed the fraud cause of action alleged in both the original complaint and the FAC. There is no evidence plaintiff and her counsel attempted to comply with the heightened level of pleading required for fraud or deceit in the complaint, even after leave was given to file an amended pleading. Even with the legal obligations on pleading fraud or deceit underscored by the trial court after the hearing on the original complaint, plaintiff simply filed anew what was previously rejected as insufficient.

We also observe plaintiff, as indicated earlier, is not an unsophisticated buyer of real property and presumably would be especially attentive to the details a borrower needs to know when transacting loans with banks.

While a plaintiff charging a bank with fraud might be excused for not knowing and pleading the name of a bank employee who drafted a letter or who participated on a particular teleconference (those names might well be known to the bank), the plaintiff must still specify the letter or give the date and time of the teleconference, and specify the statements at issue. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 794 (*West*).)

Plaintiff alleged Wells Fargo made several misrepresentations between January 2011 and the filing of her complaint, including that "there would be no foreclosure of the property if she made [three] trial payments and submitted financial information for a loan modification review." Plaintiff also alleged Wells Fargo concealed material facts about her loan and the modification process. However, she identified none of the alleged misrepresentations or concealments with specificity. Even if we were to overlook the lack of names of those making the alleged statements or omissions, there were minimal allegations as to the timing of the statement and no allegations as to how any claimed misrepresentations were made. Specifically, she fails to state whether the alleged

12

misstatements were oral or in writing. Nor does she include any information that could potentially lead to the identification of the person or persons who made the alleged modification agreement. She also repeatedly fails to provide timeframes as to when the allegedly fraudulent statements were made.

As a result, plaintiff not only failed to adequately allege the claimed acts of fraud, she also failed to adequately allege reliance and resulting damages. (See *West, supra,* 214 Cal.App.4th at p. 794; *Goldrich, supra,* 25 Cal.App.4th at p. 783; see also *Rossberg, supra,* 219 Cal.App.4th at p. 1500 [conclusory allegations of harm from being dissuaded from replacement loan or selling house does not satisfy fraud elements of reliance and damages].) Accordingly, the fraud-based causes of action were properly dismissed.

### C. Negligence and Negligent Infliction of Emotional Distress

As an initial matter, the trial court correctly dismissed plaintiff's separate cause of action for negligent infliction of emotional distress (fourth cause of action) because there is no such independent cause of action. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984 ["there is no independent tort of negligent infliction of emotional distress"].) Rather, a plaintiff may seek emotional distress damages in connection with a negligence claim. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1520.) Accordingly, we consider the purported negligent infliction claim in tandem with plaintiff's negligence claim (12th cause of action).

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." (*Lueras, supra,* 221 Cal.App.4th at p. 62.) A bank has no "common law duty of care to offer, consider, or approve a loan modification, or to offer . . . alternatives to foreclosure." (*Id.* at p. 68; see also *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206 ["No fiduciary duty exists between a borrower and lender in an arm's length transaction."]) Because her opening brief fails to cite to any specific allegations in the complaint that set forth the element of duty, we consider any contentions related to negligence to be waived. (See *Hernandez, supra,* 174 Cal.App.4th at p. 1453 [lack of specific citations to record waives claim].)

13

Banks are, however, subject to claims premised on negligent misrepresentations. (*Lueras, supra,* 221 Cal.App.4th at pp. 68–69 ["misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale" could state a claim]; see *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 947; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 898, 906 ["where specific representations were made by a Chase representative as to the likelihood of a loan modification" summary judgment in favor of Chase was in error].)

Nevertheless, to the extent plaintiff's negligence claim was premised on alleged "negligent misrepresentations" made during the course of the loan modification process, the claim was still defective. Negligent misrepresentation is a species of fraud or deceit. Given that, such a claim must be pleaded with heightened specificity. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [shareholder's action for negligent misrepresentation must be pleaded with particularity]; *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231 [both negligent and intentional misrepresentation claims require particularized pleading].) As discussed in connection with her fraud and deceit claims, plaintiff failed to plead the elements of such a claim with the requisite specificity. Accordingly, the negligence-based claims were also properly dismissed.

When a party alleges negligence as a cause of action in a loan modification context, she cannot claim the bank owed her a duty to approve the desired modification. "A loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money." (*Lueras*, *supra*, 221 Cal.App.4th at p. 67.) The modification will be controlled by the papers and regulations underlying the transaction. (*Ibid.*) "The *Biakanja*[9] factors do not support imposition of a common law duty to offer or approve a loan modification. If the modification was necessary due to the borrower's inability to repay the loan, the

---

[9] *Biakanja v. Irving* (1958) 49 Cal.2d 647.

14

borrower's harm, suffered from denial of a loan modification, would not be closely connected to the lender's conduct." (*Ibid.*)

In light of the absence of facts necessary to state a cause of action for negligence in the complaint, the information presumably available to plaintiff, and her failure to allege specific facts in those causes of action where amendment was permitted, we will not overrule the demurrer to the negligence cause of action here. We also note the generic features of this pleading referenced above.

### D. Declaratory Relief, Quiet Title, and Wrongful Foreclosure

Plaintiff's declaratory relief claim (first cause of action) asked the trial court to stop the foreclosure process because she believed Wells Fargo lacked standing to foreclose under California's nonjudicial foreclosure statutes.[10] The court disagreed and sustained the demurrer to that cause of action, as well as her claims for quiet title (fifth cause of action). Wells Fargo's first demurrer to her claim for wrongful foreclosure (13th cause of action) was sustained without leave to amend because no foreclosure sale had occurred.

A defaulting borrower has no right, on a mere hope or hunch, to test in court whether an entity conducting a nonjudicial foreclosure in fact has authority to foreclose. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*) ["Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated."]; *Jenkins, supra,* 216 Cal.App.4th at p. 513 [allowing a "preemptive" action "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature"].)

When loan and default are conceded, such hypothetical disputes between those transferring or securitizing the loan do not create an actual controversy between the

---

[10] Code of Civil Procedure section 1060 authorizes a declaratory action by "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property" when there is an "actual controversy relating to the legal rights and duties of the respective parties."

15

owing borrower and the foreclosing entity. Thus, a borrower cannot halt the nonjudicial foreclosure process with boilerplate allegations and condemnatory rhetoric about the evils of the banks' creation of securitized loan investment vehicles, and thereby put the burden on the foreclosing entity to establish in court its right to proceed with a nonjudicial foreclosure. (*Jenkins, supra,* 216 Cal.App.4th at pp. 512, 515.) A "preemptive" cause of action " 'would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Id*. at p. 513, quoting *Gomes, supra,* 192 Cal.App.4th at p. 1155–1156.)[11]

Both parties appear to agree that a borrower may pursue preemptive declaratory relief if the borrower can identify "a specific factual basis for alleging that the foreclosure was not initiated by the correct party." (*Gomes, supra,* 192 Cal.App.4th at p. 1156, italics omitted [distinguishing three federal trial court cases and finding borrower's suit speculative]; but see *Jenkins, supra,* 216 Cal.App.4th at pp. 512–513 [indicating preemptive wrongful foreclosure cases are categorically banned and, thus, suggesting doubt as to whether there is any viable "Gomes exception"].)

The only case the plaintiff cites as applying a "Gomes exception" is *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079 (*Glaski*). To begin with, *Glaski* is

---

[11] Plaintiff argues that the California Homeowners Bill of Rights (HBOR), in particular Civil Code section 2924, subdivision (a)(6), "legislatively overrules *Gomes* by requiring a foreclosing entity to show current ownership of a beneficial interest in the note or current authorization from that entity." Wells Fargo disputes this contention. But even assuming plaintiff is correct, the HBOR and the amendment to that Civil Code section became effective on January 1, 2013, *over 2 years after* the default under plaintiffs deed of trust was recorded in October 2010. (See *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 950.) "[U]nless there is an 'express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' " (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841.) The HBOR does not state that it has retroactive effect (*Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1152), and plaintiff has not identified any extrinsic sources indicating the Legislature intended that it have one.

16

distinguishable on its facts, including because it is a postforeclosure case in which the defaulting borrower sought to set aside a trustee's sale. Moreover, in that case, the borrower's loan had been securitized by being placed into a trust formed under New York law, and the appellate court concluded the borrower had standing to challenge an assignment of the note on the basis the defendants failed to assign it before the trust's closing date, creating a defect in the chain of title. (*Id*. at p. 1096.) *Glaski* hinged specifically on New York law, which the court read as voiding the assignment. (*Ibid*.) This, in contrast, is a preemptive lawsuit. Further, no comparable California or other state statute has been identified as creating a defect in the chain of title.[12]

Plaintiff alleged only that the assignment of MERS' interest in her deed of trust to HSBC Bank, as trustee, was not *recorded* until after the securitized trust's closing date. She affirmatively alleged that her loan was *sold* into the trust on or before its closing date.[13] As the trial court correctly held, "[t]he fact that this timely sale [of plaintiff's loan

---

[12] *Glaski* has also been seriously criticized not only as being inconsistent with California's developing foreclosure jurisprudence, but also as incorrectly applying New York law. (See, e.g., *Sandri v. Capital One, N.A.* (Bankr.N.D.Cal. 2013) 501 B.R. 369, 374–375 [explaining how *Glaski* unpersuasively departs from California jurisprudence]; *Rajamin v. Deutsche Bank Nat. Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90 [rejecting *Glaski* as inconsistent with other courts' interpretations of New York statute]; see also *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [borrower has no standing to challenge assignment of deed of trust]; *Jenkins, supra,* 216 Cal.App.4th 497, 515 [same]; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 [same].) Whether a defaulting borrower has "standing" under *Glaski* is presently before the California Supreme Court. (*Yvanova v. New Century Mortgage Corp.* (review granted Aug. 27, 2014, S218973) [granting review on following question: "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"]) In any case, we need not, and do not, weigh in on the *Glaski* "standing" issue since the case is readily distinguishable and, as we discuss, the record shows no defects in authorization.

[13] In her reply brief, she contradicts her own pleading, alleging that "the transfer did not . . . occur until November 4, 2010, years after the closing date of the Trust, regardless of the allegations in the FAC." This assertion comes woefully late and, in any event, is not well taken.

17

into the trust] was not immediately documented with a recorded notice of assignment is not material."

It is established under California law that a debt secured by a deed of trust can be assigned without recordation of any document. (*Fontenot v. Wells Fargo Bank, N.A., supra,* 198 Cal.App.4th at p. 272.) Recordation is not required for the assignment of a beneficial interest in a deed of trust to be effective. (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 332–336.)

We therefore need not, and do not, resolve whether plaintiff suffered "prejudice" as a result of any lack of authority of the parties participating in the foreclosure process. (Compare *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 79, 85 [concluding, in preemptive foreclosure case, that "[a]bsent any prejudice, the [borrowers] have no standing to complain about any alleged lack of authority or defective assignment"] with *Mena v. JP Morgan Chase Bank, N.A.* (N.D.Cal., Sept. 7, 2012, No. 12-1257 PSG) 2012 U.S.Dist. Lexis 128585 p. *25 [threat of foreclosure by wrong party would constitute prejudice].) We also need not consider plaintiff's failure to tender her debt.

For these reasons, plaintiff's declaratory relief claim was properly dismissed. Her related claims for quiet title and wrongful foreclosure are premised on the same supposed "securitization" issues raised in connection with their insufficient declaratory relief claim. Accordingly, for the reasons we have discussed, these claims were also properly dismissed.

### E. Intentional Infliction of Emotional Distress

Plaintiff also alleged Wells Fargo intentionally inflicted emotional distress (third cause of action) by attempting to "steal" her home through the "demand [of] mortgage payments" without legal right. However, as we have discussed, she has failed to state any preemptive claim for unlawful foreclosure and, as will be discussed, she has failed to demonstrate any error in the sustaining of the demurrer to her promissory estoppel claim. Accordingly, her conclusory assertion that Wells Fargo intentionally acted to "steal" her house does not, and cannot, support an intentional infliction claim.

18

Furthermore, plaintiff alleged no specific conduct during the ongoing "loan agreement" dispute "that could be considered 'outrageous.' " (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009.) For instance, "[t]here are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated [her]." (*Ibid*.) Accordingly, the intentional infliction claim was also properly dismissed.

### F. Unfair Competition Law

The 14th cause of action was for violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.). Plaintiff has once again failed to identify or adequately cite to any allegations made in support of her UCL claim. Accordingly, she has waived any issue on appeal in connection with this claim. (*Hernandez, supra,* 174 Cal.App.4th at p. 1453 [lack of specific citations to record waives claim]; see also *Rossberg, supra,* 219 Cal.App.4th at p. 1502 ["the Rossbergs fail to cite any authority to explain what constitutes an unfair business practice or act under the UCL" even though they "bore the burden to show how the alleged facts are sufficient to establish every element of this cause of action"].)

As Wells Fargo correctly asserts, the UCL claim was derivative of plaintiff's other, failed causes of action. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185 ["When a statutory claim fails, a derivative UCL claim also fails."]; *Cansino, supra,* 224 Cal.App.4th at p. 1474 [when fraud claims fail for lack of specificity, UCL claim based on fraud also fails].) Accordingly, the dismissal of plaintiff's UCL claim must stand.

### G. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's sixth cause of action alleged that Wells Fargo breached the implied covenant of good faith and fair dealing by failing "to properly review [her] loan for modification as promised."

"Every contract imposes on each party a duty of good faith and fair dealing in contract performance and enforcement such that neither party may do anything to deprive the other party of the benefits of the contract. [Citations.] ' "This covenant not only

19

imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose." ' [Citation.] [¶] 'The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith.' [Citation.]" (*Lueras, supra,* 221 Cal.App.4th 49 at p. 76.)

Because " 'the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract' [citation]" (*Jenkins, supra,* 216 Cal.App.4th at p. 524), it is impossible to assess whether a party has breached the implied covenant of good faith and fair dealing with respect to a contract where the party alleging breach fails to allege the terms of the underlying contract. While the parties obviously had a contractual relationship with respect to the original loan, plaintiff fails to allege the existence of a contract to negotiate a modification of the already existing loan agreement.

Specifically, plaintiff fails to allege that a written contract to this effect exists and fails to identify the specific terms of any such contract. Her factual allegations as to what various employees at Wells Fargo told her at different times do not establish the existence of such a contract. In other words, apart from her conclusory allegation that there was a contract between the parties to work toward a modification, there are no other allegations identifying the parties who may have entered into such a contract, the alleged date on which the contract was entered into, or what the terms of this alleged contract were. Given the absence of any allegations regarding the terms of the contracts on which plaintiff relies, the FAC fails to state a claim for breach of the implied covenant of good faith and fair dealing based on the purported agreement to modify her loan. The trial court thus properly sustained Wells Fargo's demurrer to the sixth cause of action.

### H. Promissory Estoppel

" ' "The elements of a promissory estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made;

20

(3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.' " ' [Citation.]" (*Aceves v. U.S. Bank N.A.* (2011) 192 Cal.App.4th 218, 225.)

Although plaintiff also purports to challenge the trial court's sustaining of the demurrer on the promissory estoppel claim (11th cause of action), she has again neither analyzed the elements of such claim nor cited any record evidence supporting any element of such a claim. As a result, she has waived appellate review, and we therefore affirm the ruling in favor of Wells Fargo. (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["Contentions are waived when a party fails to support them with reasoned argument . . . ."]; *Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409, 430 ["Our scope of review is limited to issues that have been adequately raised and are supported by analysis."], citing *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

## I. *Unpursued Injunctive Relief*

Plaintiff has not even attempted to pursue her claims for injunctive relief on appeal. Accordingly, we deem these claims abandoned and do not examine the merits of their dismissal. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 984, fn. 1 ["failure to discuss cause of action on appeal from trial court's order sustaining demurrer constitutes abandonment of that cause of action on appeal"].)

## IV. *Denial of Leave to File Second Amended Complaint*

Having concluded the demurrers were properly sustained or the issues have been waived on appeal, we next consider whether the trial court properly exercised its discretion in denying leave to amend.

Plaintiff has proposed no further amendments that would cure the defects in her pleadings we have discussed. Accordingly, the trial court's sustaining of the demurrers without leave to amend was not an abuse of discretion. (*Zelig v. County of Los Angeles*

21

(2002) 27 Cal.4th 1112, 1126 [burden on the plaintiff to show " 'reasonable possibility' " of amending].)

In short, we find no reason to reverse any portion of the trial court's sustaining of Wells Fargo's demurrer without leave to amend. In light of our conclusions, we do not address the remainder of the arguments made by the parties.

### DISPOSITION

The judgment is affirmed.

_____
DONDERO, J.

We concur:


_____
HUMES,. P.J.


_____
BANKE, J.

23